IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

---

UNITED STATES OF AMERICA

    v.                                                        No. 23-cr-20191-004

DESMOND MILLS, JR.,
       Defendant.

---

POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING

---

COMES NOW the Defendant, Desmond Mills, Jr., by and through counsel, Blake D. Ballin, and submits this his Position With Respect to Sentencing, and would state and show as follows:

<u>Certificate of Consultation</u>

Counsel for the defendant certifies that he has complied with L.Cr.R. 32.1 by providing notice of the following objections to the United States Probation Office and to opposing counsel.

<u>Offense</u>.

Mr. Mills was indicted on two counts of Deprivation of Rights Under Color of Law, 18 U.S.C. § 242 and 2 (maximum 0 years to life or death); one count of Conspiracy to Commit Witness Tampering, 18 U.S.C. § 1512(k) (maximum 20 years); and one count of Obstruction of Justice, 18 U.S.C. § 1512(b)(3).  PSR at ¶ 1.

<u>Plea</u>.

Mr. Mills entered into a plea agreement and pled guilty to one count of deprivation of rights and one count of conspiracy to commit witness tampering.  PSR at ¶ 2.  The Government

agreed to dismiss the remaining counts at sentencing, and to recommend a three (3) point downward adjustment for acceptance of responsibility under USSG § 3E1.1.  Id.  The Government further agreed to recommend a sentence not to exceed 180 months incarceration, and agreed that Defendant is free to argue for a sentence of less than 180 months.  Id.

### Conduct of Conviction.

On or about Jan. 7, 2023, Mills arrived on scene after his co-defendants attempted a traffic stop on the victim, Tyre Nichols.  Mr. Nichols initially had fled on foot, and was then physically detained by co-defendant Bean while Mills parked the patrol car.  PSR at ¶ 12.  Nichols continued to resist, and Mills deployed a chemical agent against Nichols three times before stepping away from the scene as the other co-defendants continued to use force on Nichols.  Id.  Mills walked back to the scene and struck the victim's left arm multiple times with his ASP baton.  PSR at ¶ 13.  Mills then disengaged from Nichols, but did nothing to stop the assault by the other co-defendants.  PSR at ¶ 14.  Mills did not provide medical aid to Nichols, and did not tell dispatch that Nichols had injuries that required medical attention.  PSR at ¶ 16.  Mills removed his body cam when discussing the incident with fellow officers at the scene.  PSR at ¶ 17.  Mills, along with the other officers, later provided false and misleading information in the course of the investigation.  PSR at ¶ 23-24.  The cause of the victim's death was blunt force injuries to the head.  PSR at ¶ 33.

### Determining the Offense Level.

The base offense level for deprivation of rights in this case will be determined under USSG § 2H1.1(a)(1), which incorporates the offense level from the offense guideline applicable to any underlying offense.  The probation officer argues that the base level should be 38 under USSG § 2A1.2 (second degree murder).  However, Defendant would submit that the appropriate

base level is **18** under USSG § 2A1.4(a)(2)(A) (involuntary manslaughter) because the offense involved criminally reckless conduct. The application notes to § 2A1.4 provide that criminal recklessness sufficient to establish involuntary manslaughter means "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." USSG § 2A1.4, cmt. 1.

It is key that the sentencing court carefully distinguish between the type of criminal recklessness that establishes involuntary manslaughter and the extreme criminal recklessness that can establish malice aforethought so as to constitute second degree murder. "Murder is the unlawful killing of a human being with malice aforethought, while manslaughter is the unlawful killing of a human being without malice." United States v. Conaster, 514 F.3d 508, 523 (6th Cir. 2008) (citing 18 U.S.C. §§ 1111(a) and 1112(a)). "Involuntary manslaughter is further defined as an unlawful killing either in the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, or a lawful act which might produce death." Id. (citing 18 U.S.C. § 1112(a). "Malice aforethought [for second degree murder] may be inferred when the defendant 'grossly deviates from the standard of care to such an extent that a jury could conclude that he must have been aware of a serious risk of death or serious bodily injury.'" Id. (citing United States v. Sheffey, 57 F.3d 1419, 1430 (6th Cir. 1995); United States v. Milton, 27 F.3d 203, 206 (6th Cir. 1994)).

"The distinction between involuntary manslaughter and second-degree murder is that the former does not require malice aforethought." United States v. Wood, 207 F.3d 1222, 1229 (10th Cir. 2000). The Tenth Circuit in Wood recognized that the definitions developed in the case law used overlapping terminology as both definitions referred to "reckless and wanton." "The

substantive distinction is the severity of the reckless and wanton behavior: Second-degree murder involves reckless and wanton disregard for human life that is extreme in nature, while involuntary manslaughter involves reckless and wanton disregard that is not extreme in nature." Id. (citing, inter alia, United States v. Sheffey, 57 F.3d 1419, 1430 (6th Cir. 1995) (upholding jury instructions distinguishing recklessness in second degree murder as "extreme disregard for human life" from recklessness in involuntary manslaughter as "reckless disregard for human life which is not of an extreme nature").  "Extreme recklessness falls between knowledge and ordinary recklessness on a spectrum of mental states; it requires that a perpetrator act with extreme disregard for human life."  Brewer v. United States, 89 F.4th 1091, 1093 (8th Cir. 2024) (citation omitted).  "Extreme recklessness in a criminal case is considered a form of intentional conduct because it includes an element of deliberateness – a conscious acceptance of a known, serious risk."  Id. (citation and internal quotations omitted).

"Extremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death or serious bodily injury to another or to others – though unaccompanied by any intent to kill or do serious bodily injury – and which actually causes the death of another, may constitute murder."  United States v. Velazquez, 246 F.3d 204, 214 (2d Cir. 2001) (citation omitted).  "[A] reckless killing is murder only if done "under circumstances manifesting extreme indifference to the value of human life." Id. (citation omitted).  By contrast, "involuntary manslaughter is an unintentional killing that evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice."  United States v. Paul, 37 F.3d 496, 499 (9th Cir. 1994).  Accordingly, in application "the choice between second-degree murder and involuntary manslaughter will turn on how great a risk of serious bodily injury [the defendants] could

reasonably apprehend would result from their assaultive conduct and what that risk reveals about the degree of their indifference to [the victim's] life." Velazquez, 246 F.3d at 215. Compare United States v. Milton, 27 F.3d 203 (6th Cir. 1994) (sentencing court found extreme recklessness to establish malice aforethought and applied second-degree murder as cross-referenced offence for guidelines calculation where defendant fired at least two shots into victim's car) with United States v. Livoti, 22 F. Supp. 2d 235 (S.D.N.Y. 1998) (defendant officer in a police choke-hold case acted with a high degree of risk that his conduct would result in death or serious bodily injury and was sentenced under base offense level for involuntary manslaughter); United States v. Thao, 2022 WL 2905727 (D. Minn. July 22, 2022) (defendant police officers in the George Floyd case sentenced under base offense level for involuntary manslaughter where they "genuinely thought that Mr. Floyd was suffering from excited delirium with a drug overdose" and/or "genuinely believed that the officers were dealing with a drug overdose with possible excited delirium") ("Involuntary manslaughter therefore requires 'proof that the defendant acted grossly negligently in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others." (quoting United States v. Schmidt, 626 F.2d 616, 617 (8th Cir. 1980)).

In this case, Defendant fully recognizes that his criminal conduct led to the death of the victim, which is an element of both second degree murder and involuntary manslaughter. Defendant further recognizes that his conduct constituted criminal recklessness as defined in connection with involuntary manslaughter, *i.e.*, that he was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

USSG § 2A1.4, n.1. To wit, Mr. Mills used a chemical agent on the victim while he was being held by other officers, struck the victim on the arm multiple times with his police baton, failed to intervene while the victim was being assaulted by other officers, and failed to provide medical aid or assess other first responders of the victim's need for medical aid. These actions as outlined in the PSR form the basis of the Defendant's criminal culpability; however they do not rise to the level of *extreme* criminal recklessness necessary to constitute malice aforethought as required under second degree murder.

Defendant further submits that he should receive a downward adjustment for Mitigating Role under USSG §3B1.2, either a 4 level reduction under subsection (a) as a minimal participant, or alternatively a 2 level reduction under subsection (b) as a minor participant. "To receive a two-point or four-point role-based reduction, a defendant must have been 'substantially less culpable than the average participant in the criminal activity.'" United States v. Broussard, 882 F.3d 104, 111(5th Cir. 2018) (citing USSG §3B1.2 cmt. n. 3(A)). "A 'minimal participant' is someone who lacks knowledge or understanding about the scope or structure of the enterprise; a 'minor participant' is someone who is less culpable than most participants but more culpable than a minimal participant." Id. (citing United States v. Angeles-Mendoza, 407 F.3d 742, 753 (5th Cir. 2005)). Here, as outlined above, while Mills admittedly engaged in some assaultive conduct, the gravitas of his conduct was a crime of omission in failing to intervene and prevent the more serious assault by the other officers and in failing to render aid. Mills was not in a supervisory role over the other officers, nor was he the ringleader of the assault.

Proceeding from base level 18, less 4 levels for mitigating role, the PSR adds 6 levels for an offense committed under color of law pursuant to USSG § 2H1.1(b)(1), and 2 levels for obstruction of justice pursuant to USSG § 3C1.1, leaving an adjusted offense level of 22. See

PSR at ¶¶ 44, 47.  Defendant is entitled to a full three level reduction for acceptance of responsibility under USSG § 3E1.1(a) and (b), which results in a total offense level of **19**.  PSR at ¶¶ 50-51.

### Criminal History.

Mr. Mills has a criminal history score of zero (0) which places him in Criminal History Category I.  PSR at ¶¶ 56-57.

### Sentencing Table.

Offense level 19, when coupled with Criminal History Category I, yields a sentencing range of 30-37 months, which lies in Zone D of the sentencing table.

### Downward Departure.

In the event the Government files a Motion for a Downward Departure pursuant to USSG § 5K1.1, Defendant requests that such departure be granted.  Defendant has fully and formally cooperated with the Government and provided substantial assistance .

Mr. Mills will file a separate sentencing memorandum addressing the appropriateness of a variance from the guidelines and arguing for a sentence sufficient but not greater than necessary to comply with the purposes of sentencing under 18 U.S.C. § 3553 (a) (2).

Mr. Mills anticipates calling two or three brief character witnesses during the sentencing hearing.  Therefore it is possible that the hearing will last longer than one hour.

WHEREFORE, PREMISES CONSIDERED, Mr. Mills prays in the following particulars:

1. That the Court take note of the plea agreement which contemplates that any sentence not exceed 180 months of incarceration.

2. That the Court find the Defendant acted with criminal recklessness as defined in USSG § 2A1.4 and apply a base offense level of 18 (involuntary manslaughter),

and a guidelines range of 30-37 months.

3. That the Court grant a downward departure under USSG § 5K1.1 and consider the Defendant's substantial assistance in fashioning its sentence.

4. For such further relief to which this Defendant may be entitled.

Respectfully submitted,
BALLIN, BALLIN & FISHMAN, P.C.

/s/Blake D. Ballin, Esq.
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103
(901) 525-6278
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all interested parties via the ECF email system, this the **27th day of January, 2025.**

/s/Blake D. Ballin, Esq.