IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  No. 23-CR-20191-MSN |
| | ) |
| **DESMOND MILLS,** | ) |
| | ) |
| **Defendant.** | ) |

**POSITION OF THE UNITED STATES WITH RESPECT TO
SENTENCING FOR DEFENDANT DESMOND MILLS**

The United States of America, by and through Reagan T. Fondren, Acting United States Attorney for the Western District of Tennessee, Kathleen Wolfe, Deputy Assistant Attorney General of the Civil Rights Division, and Forrest Christian, Deputy Chief, notifies the Court of the position of the United States with respect to the sentencing of defendant Desmond Mills.

1. The attorneys for the United States have received and reviewed the Presentence Investigation Report prepared in this matter.

2. The United States communicated minor objections to the factual information contained in the Presentence Report to the United States Probation Office.

3. The United States concurs with the Sentencing Guidelines calculations contained in the Presentence Report.

4. Specifically, the probation officer correctly concluded that the appropriate cross-reference is second-degree murder, § 2A1.2. The guideline for Count 1 is U.S.S.G.

§ 2H1.1. Pursuant to § 2H1.1(a)(1), the base offense level is "the offense level from the offense guideline applicable to any underlying offense." The relevant conduct for determining the underlying offense includes both "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and all reasonably foreseeable acts and omissions within the scope and in furtherance of any charged or uncharged joint criminal scheme. § 1B1.3(a) (defining relevant conduct).

5. Second-degree murder is "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). "Malice aforethought," in turn, "may be established by evidence of conduct that is reckless and wanton, and a gross deviation from a reasonable standard of care, of such nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. McDougle*, 82 F. App'x 153, 157–58 (6th Cir. 2003) (internal quotation marks omitted); *see also United States v. Conatser*, 514 F.3d 508, 523-24 (6th Cir. 2008), *cert. denied*, 55 U.S. 963 (2008) (holding that malice aforethought may be inferred when the defendant grossly deviates from the standard of care to such an extent that he must have been aware of a serious risk of death or serious bodily injury).

6. The factual basis for defendant Mills' guilty plea, the Presentence Investigation Report for defendant Mills, and the evidence presented at trial in *United States v. Bean, et al.,* establish that defendant Mills' conduct warrants application of the cross-reference for second-degree murder.

7. Defendant Mills pleaded guilty to a violation of 18 U.S.C. § 242 and admitted that he "willfully used unreasonable force against Tyre Nichols." (ECF No. 91-1, Factual

2

Basis, at PageID 275); (ECF No. 104, Change of Plea Hearing for Desmond Mills, at PageID 338) (defendant admitted that "he willfully used unreasonable force"). Defendant Mills further admitted that he "aided and abetted [defendants] Martin, Bean, Haley, and Smith in the use of unreasonable force in violation of Nichols' rights under the Fourth Amendment." (ECF No. 91-1, Factual Basis, at PageID 276). As defendant Mills acknowledged with his guilty plea, these violations of § 242 resulted in the death of Tyre Nichols. (*Id.*); (ECF No. 104, Change of Plea Hearing for Desmond Mills, at PageID 338) (defendant agreed with and stipulated to the facts presented by the government at the change of plea hearing). During entry of his guilty plea, defendant Mills confirmed that he willfully used excessive force and failed to intervene in the use of excessive force; further, he admitted that this conduct resulted in the death of Tyre Nichols. This admission of willful – that is, voluntary and intentional – criminal conduct satisfies the showing of malice aforethought necessary to impose the cross-reference for second-degree murder.

8. A person acts willfully when he acts voluntarily and intentionally with the specific intent to do something the law forbids. (ECF No. 691, Jury Instructions Tr., at PageID 13457). Willfulness is a type of intent, and intent is a state of mind. (*Id.*) In considering intent, one may infer that the defendant intended the natural and probable results of any acts he knowingly took or knowingly failed to take. (*Id.* at PageID 13457-58.) A defendant acted willfully where he used more force that what a reasonable officer would have used under the circumstances. (*Id.*) A defendant also acted willfully where he voluntarily and intentionally failed to intervene to protect Mr. Nichols from force

3

he knew was unreasonable, even though he knew he had an opportunity and duty to intervene. (*Id.*)

9. At trial, defendant Mills offered testimony that provided an additional basis for finding that his willful criminal conduct supports application of the cross-reference for second degree murder. Although defendant Mills was aware that defendant Martin's punches to Nichols' head posed a serious risk of death or serious bodily injury, he chose not to intervene; this decision was such "a gross deviation from a reasonable standard of care" as to constitute malice aforethought. *McDougle*, 82 F. App'x at 157–58. The Court is not only "warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm"; the Court can rely on defendant Mills' admission that he in fact *was* aware of such a risk. *Id.* Defendant Mills testified that he saw defendant Martin repeatedly punch Nichols in the head and that he recognized that Nichols might die as a result. (ECF No. 645, Trial Tr., at PageID 9891-92 & 12590). Defendant Mills also knew from his MPD training that defendant Martin's blows to Nichols' head could be "fatal." (*Id.* at 12594.) Despite this, defendant Mills failed to intervene to stop defendant Martin's assault. (*Id.* at 12592-93.) The consequences – Nichols' death – were entirely foreseeable.

10. The Court also could apply the cross-reference based on the use of excessive force by defendant Mills and his subsequent failure to take any action to address Nichols' injuries. Defendant Mills admitted at trial that he used excessive force on Nichols because he was "angry" and because other officers told him to hit Nichols. (ECF No. 677, Trial Tr., at PageID 12587). Defendant Mills admitted that he struck Nichols with a baton even though Nichols did not pose a threat. *Id.* at 12588. After delivering

multiple baton strikes to Nichols' arm and watching "a lot" of blows to Nichols' head, defendant Mills did "nothing" for Nichols in the five minutes that followed the assault. *Id.* at 12590 & 12600.  Defendant Mills chose not to provide truthful and complete information to EMTs on the scene, to his supervisor, or to medical staff at the hospital, even though he had multiple opportunities to do so.  Defendant Mills testified that he instead joined the "cover up" to hide what he and other officers had done during their assault of Nichols.  *Id.* at (ECF No. 646, Trial Tr., at PageID 10165).

11. The cross-reference also is appropriate because defendant Mills aided and abetted defendant Martin in the assault.  While defendant Mills was present, defendant Martin punched Mr. Nichols at least five times in the face with a closed fist, even though Mr. Nichols was "helpless." (ECF No. 603, Trial Tr., at PageID8495–98).  Defendant Martin testified that, during a post-assault conversation captured on video, the officers discussed the haymakers and other blows they inflicted and defendant Mills admitted that he thought that the officers were "about to kill this guy." (ECF No. 603, Trial Tr., at PageID 8516).  Audio from bodyworn cameras captured officers laughing after this comment.  *Id.*

12. The trial testimony was corroborated by body-worn and surveillance video camera footage that captured defendant Mills engaged in willful criminal conduct.  The video also captured comments defendant Mills made during and immediately following the assault.  The video footage introduced at trial showed defendant Mills threatening Nichols with violence; using excessive force on a helpless, restrained man; watching other officers use excessive force; joining in cover-up conversations after the assault; and providing false and misleading information, including a false claim to a supervisor

that the officers had done everything "by the book." (ECF No. 645, Trial Tr., at PageID 9890). The video also captured defendant Mills deliberately ignoring Nichols' serious medical needs in the aftermath of the assault. (*Id.* at 12590 & 12600.)

13. Defendant Mills' conduct during and after the assault of Tyre Nichols was "reckless and wanton, and a gross deviation from a reasonable standard of care, of such nature that [the Court] is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *McDougle*, 82 F. App'x at 157–58. The Sixth Circuit and other federal appellate courts have repeatedly upheld the application of the second-degree murder guidelines in nearly identical circumstances, including where defendants have failed to disclose their knowledge of a victim's injuries to cover up the crime. *See, e.g.*, *Conatser*, 514 F.3d at 523 (upholding application of second-degree murder cross-reference in § 242 case in which defendant punched victim in the head twice and encouraged a codefendant to beat victim and then failed to provide information about head trauma to responding EMTs); *McDougle*, 82 F. App'x 153, 158 (same, in § 242 case in which defendants restrained victim and repeatedly punched him in the abdomen and then denied knowledge of the victim's injuries to medical provider).[1]

---

[1] *See also United States v. Coll*, 762 F. App'x 56, 61 (2d Cir. 2019) (applying the second-degree murder cross reference in a § 242 case in which a correctional officer repeatedly kicked victim in the head "[e]ven if [the defendant] did not intent to kill or seriously injure [the victim]" because such conduct "clearly manifested a reckless indifference to whether [the victim] lived or died"); *United States v. Sharma*, 394 Fed. Appx. 591 (11th Cir. 2010), *cert. denied*, 562 U.S. 1299 (2011) (upholding cross-reference to second-degree murder in § 242 case where an officer moved an inmate into a cell with another inmate who was likely to assault him because the inmate's death was a foreseeable consequence of the move); *United States v. Slager*, 912 F.3d 224, 235-36 (4th Cir. 2019) (upholding the second-degree murder cross-reference in a § 242 case and finding that "[m]alice exists when the evidence demonstrates that the defendant acted 'with a heart that was without regard for the life and safety of others'") (citation omitted).

14. In *McDougle*, the Sixth Circuit upheld application of the second-degree murder cross-reference under circumstances like those presented here:

> The record supports the district court's holding [on the second-degree murder cross-reference]. The presentence reports and [defendants] Lewis' and Manns' own testimony establish that both were aware that that Monds [the victim of their assault] was at a substantial risk of serious bodily injury. Lewis admitted that he restrained Monds while Manns, McDougle, and another DT [staff member] beat him in the abdomen. Manns admitted beating Monds. Both Lewis and Manns acknowledged that shortly after the beating it was clear that Monds was hurt; Manns testified that Monds was doubled over in pain clutching his stomach and could not maintain his balance very well, and Lewis testified that he knew Monds was seriously hurt. Lewis admitted that he denied any knowledge of Monds' injuries when asked by the nurses, and sat by as the nurses erroneously medicated Monds for a digestive ailment. Manns admitted that he did not tell anyone what happened to Monds. From their substantial efforts at covering up Monds' injuries, one can easily infer that Manns and Lewis were aware that they were placing Monds at a substantial risk of serious bodily injury.

*McDougle*, 82 F. App'x at 158. Here, defendant Mills acted similarly: he assaulted Tyre Nichols; watched defendant Martin repeatedly punch Nichols in the head; recognized that Nichols had been badly injured by the assault and might die as a result; and yet did not take any steps to address his serious injuries. From these actions, the Court can easily infer that defendant Mills was aware that his conduct and the conduct of those he had aided and abetted had exposed Nichols to a serious risk of death and serious bodily injury. Further, defendant Mills, by his own admission, recognized that Nichols could die as a result. Under those circumstances, and pursuant to well-settled Sixth Circuit authority, application of the cross-reference for second degree murder is necessary.

15. Defendant Mills argues in his sentencing position that the guideline for involuntary manslaughter is the appropriate cross-reference because his "reckless" conduct was "not extreme in nature." (ECF No. 756, Defendant Mills' Position with Respect to

7

Sentencing, at PageID 15119.) To support his claim that defendant Mills did not show "extreme indifference to the value of human life," *id.*, he cites cases from outside the Sixth Circuit whose facts may be readily distinguished from those presented here. (*Id.* at PageID 15120, citing two chokehold cases.) Neither of these cases warrants disregarding the Sixth Circuit cases that represent binding authority and address facts that are nearly identical to those presented here. Defendant Mills' use of excessive force, his efforts to aid and abet the use of excessive force, his failure to intervene in the use of excessive force that he recognized was "about to kill" Nichols, and his deliberate indifference to his victim's serious medical emergency afterwards unquestionably demonstrates an extreme indifference to the value of Mr. Nichols' life and justifies application of the cross-reference for second degree murder.

16. The United States will provide a detailed recommendation supporting a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a) and that is consistent with the terms of the plea agreement.

17. The United States does not anticipate calling any witnesses at the sentencing hearing but does anticipate providing the victim's family with an opportunity to make a victim impact statement. Therefore, it is possible that this hearing will last longer than one hour.

Respectfully Submitted,

REAGAN T. FONDREN<br>ACTING UNITED STATES ATTORNEY

DAVID PRITCHARD<br>ELIZABETH ROGERS

       Assistant United States Attorneys
       167 N. Main, Suite 800
       Memphis, TN 38103

       KATHLEEN WOLFE
       Deputy Assistant Attorney General
       Civil Rights Division
       U.S. Department of Justice

By: <u>/s/ Forrest Christian</u>
   FORREST CHRISTIAN
   Deputy Chief
   KATHRYN E. GILBERT
   Special Litigation Counsel
   ANDREW MANNS
   Trial Attorney
   950 Pennsylvania Ave., NW
   Washington, DC 20530
   (202) 616-2430

## CERTIFICATE OF SERVICE

I, Forrest Christian hereby certify that a copy of the foregoing Position Paper of the United States has been filed via the District Court's electronic case filing system.

This fourth day of February, 2025.

/s/ Forrest Christian<br>
Forrest Christian<br>
Deputy Chief